IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTIAN A. GONZALEZ, : CIVIL ACTION NO. **1:CV-10-0901**
:
    Petitioner : (Judge Rambo)
:
v. : (Magistrate Judge Blewitt)
:
DEPARTMENT OF HOMELAND :
SECURITY, et al., :
:
    Respondents :

## **REPORT AND RECOMMENDATION**

**I. Background and Procedural History.**

On March 25, 2010, Petitioner Christian A. Gonzalez ("Petitioner") filed, through counsel, an Emergency Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241. (Doc. 1). On March 28, 2010, Petitioner filed an Emergency Motion for Release and for a Preliminary Injunction as well a support Memorandum. (Docs. 2 and 2-2). Petitioner filed this action in the United States District Court for the Eastern District of Pennsylvania. On April 26, 2010, the Eastern District of Pennsylvania District Court transferred this case to the U.S. District Court for the Middle District of Pennsylvania since Petitioner was confined at the Lackawanna County Prison ("LCP"), Scranton, Pennsylvania. Named as Respondents are the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Janet Napolitano, Secretary of the DHS, Thomas Decker, Philadelphia Director for ICE, David Clark, Director of ICE Operations, and John Morton, Deputy Secretary of the DHS. (Doc. 1, ¶'s 7-12).[1]

---

[1] The LCP Warden is the only proper Respondent with respect to Petitioner's habeas petition. *See* 28 U.S.C. §§ 2242 and 2243. *See also Jado v. Decker*, 2009 WL 1456595, *1, n.

On May 4, 2010, the Court issued a Show Cause Order on Respondents. On May 21, 2010, Respondents filed their joint Response to Petitioner's Petition for Writ of Habeas Corpus and Motion for Preliminary Injunction with attached exhibits. (Doc. 14 and Exs. 1-7). Petitioner did not file a Traverse. Petitioner's habeas petition and injunction motion are ripe for disposition.

On June 11, 2010, Respondents filed a Notice to the Court with an attachment indicating that on June 4, 2010, an Immigration Judge ("IJ") issued an Order denying Immigration and Customs Enforcement's Motion to Expedite Petitioner's removal hearing. The IJ noted that Petitioner requested that her removal hearing date not be moved up.

Petitioner states that "in February of 2010, a year after her release" from custody of the USMS, and after fully serving her federal prison sentence, she was served with a Notice to Appear ("NTA") by ICE agents and taken into federal custody. Petitioner indicates that she has remained in federal custody since "February of 2010," and she is still currently being detained by ICE at LCP. (Doc. 1, ¶'s 21.-22.). Petitioner is presently waiting for her removal hearing before the IJ and she is not subject to a final order of removal.

Petitioner is a native and a citizen of Nicaragua. Petitioner entered the United States some time in 1988 without inspection or admission by an immigration official. (Doc. 14, Exs. 2 and 3). On January 18, 1996, Petitioner adjusted her status to that of a lawful permanent resident pursuant to Section 209 (b) of the Immigration and Nationality Act. ("INA"). (*Id.*).

On February 10, 2009, Petitioner plead guilty in United States District Court for the Eastern

---

1 (M.D. Pa.)("The only properly named Respondent in a federal habeas corpus action is the applicant's custodial official.").

2

District Court of Pennsylvania to distribution of cocaine and possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). (Doc. 1, ¶ 17 and Doc. 14 , Ex. 4). On the same day, Petitioner was sentenced to one day in custody of the United States Marshals. (Doc. 1, ¶ 18 and Doc. 14 , Ex. 4). Petitioner was also placed on supervised release for three years after her release from confinement. (Doc. 14 , Ex. 4, p. 3). On or about February 10, 2009, Petitioner served four hours in the custody of the United States Marshals. The United States Marshals released Petitioner after the four hours and deemed her 1-day prison sentence fully served. (Doc 1, ¶19). After the Marshals had deemed Petitioner's sentence fully served, she was released free, back into the community. (Doc. 1, ¶20).

On January 21, 2010, ICE officials issued a Notice to Appear charging Petitioner as being subject to removal from the Untied States under Section 237(a)(2)(A)(iii) of the INA because Petitioner was convicted of an aggravated felony as defined in Section 101(a)(43)(B) based on her February 2009 drug conviction. On January 28, 2010, ICE officials arrested Petitioner and served her with the Notice to Appear. (Doc. 14, p. 3 and Exs. 2 & 3).[2]

Petitioner has been continuously detained in LCP by ICE since her arrest. In ICE's Record of Deportable/Inadmissible Alien it indicates that after Petitioner's arrest, "[Petitioner] will remain in ICE custody as she is a mandatory dentention (sic) case under Section 236(c) of the [INA]." (Doc. 14, Ex. 3, p. 3). Thus, Petitioner was released from the custody of the USMS on February 10, 2009, after she fully served her federal incarceration sentence, and she remained free from restraint and

---

[2]At the time of Petitioner's arrest by ICE agents, Petitioner was still on federal probation from her drug conviction sentence.

was employed until she was arrested, almost one year later, by ICE agents on January 28, 2010.

On March 29, 2010, Petitioner appeared before an IJ with respect to her request for change in custody status while she waited for her removal hearing. Petitioner's request was denied by the IJ 's Order issued that same date since the IJ found Petitioner to be subject to mandatory detention under Section 236(c)(1)(B) of the INA. (Doc. 14, Ex. 5).

## II. Claims of Habeas Petition.

Petitioner's claim is based on her contention that she is not subject to the mandatory detention provision of INA § 236(c) since she was not taken into custody by ICE when she was released from incarceration. Rather, Petitioner was arrested and taken into custody by ICE on January 28, 2010, about eleven months after she was released from incarceration with respect to her federal drug sentence, on February 10, 2009. Thus, Petitioner contends that she is statutorily and constitutionally entitled to an individualized bond hearing pending a final order in her removal proceedings since she was not taken into ICE custody "when" she was released from custody of the USMS on February 10, 2009, but rather, was taken into custody almost one year later on January 28, 2010. Petitioner also seeks her release from detention. (Doc. 1, p. 17). As mentioned, the record indicates that Petitioner had a hearing before the IJ on March 29, 2010, on Petitioner's request for bond pending the removal proceedings. The IJ denied Petitioner's request finding she was subject to mandatory detention under Section 236(c)(1)(B) of the INA. (Doc. 14, Ex. 5). The IJ gave Petitioner notice that her removal proceedings have been scheduled for August 23, 2010. (Doc. 14 Ex. 6). Accordingly, Petitioner is still in ICE's custody at Lackawanna County Prison pursuant to IJ's decision that she was subject to mandatory detention under Section 236(c)(1)(B) of

the INA. (Doc. 14, Ex. 5).

Petitioner indicates that it would be futile to either appeal the IJ's March 29, 2010 Order or to request the IJ to hold an individualized bond hearing in her case in light of BIA precedent, namely in *Matter of Rojas,* 23 I. & N. Dec. 117 (BIA 2001), 2001 WL 537957 (BIA). (Doc. 1, ¶ 15).[3]

Petitioner states that she was released from custody of the United States Marshals on or about February 10, 2009. Petitioner does not dispute that her February 2009 conviction for distribution of cocaine and possession with the intent to distribute subjects her to removal from the United States. Nor does Petitioner challenge that she is removable for an aggravated felony pursuant to Section 237(a)(2)(A)(iii). Rather, Petitioner only argues that she is not subject to the mandatory detention under Section 236(c)(1)(B) of the INA during the pendency of her removal proceedings. Petitioner contends that mandatory detention provision only applies to an alien who is taken into custody by ICE at the time that she has been released from custody with respect to her underlying removable offense. Petitioner argues that the mandatory detention provision of INA § 236(c) does not apply to her because she was not detained by ICE at the time she was released from criminal custody, but rather, over eleven months later. Respondents admit that ICE officials arrested Petitioner on January 28, 2010, while she was leaving her home. (Doc 14, p. 3). Respondents do not give any reason as to why there was a delay of over eleven months before taking Petitioner into ICE custody. Nor do Respondents contend that ICE could not locate Petitioner during the over 11-month period. In fact, as stated, Petitioner was on supervised release

---

[3]Respondents attached a copy of the in *Matter of Rojas* case to their Response, Doc. 14, Ex. 1.

with the Eastern District of Pennsylvania Probation Office at the time ICE took her into custody on January 28, 2010. (Doc. 14, Ex. 3, p. 3).

### III. Discussion.

Initially, based on *Thomas v. Hogan*, 2008 WL 4793739, *3 (M.D. Pa.), we agree with Petitioner that this Court has jurisdiction to decide his Habeas Petition. In *Thomas*, the Court stated:

> It is well-established that district courts retain jurisdiction to consider an alien's habeas challenge to the statutory framework mandating his detention during removal proceedings. *See* 28 U.S.C. § 2241(c)(3) (noting that the writ of habeas corpus may extend to those held in custody in violation of the constitution "or laws or treaties of the United States"); *Demore v. Kim,* 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (finding that the INA does not bar habeas review of statutory or constitutional challenges to detention).

*Id*. *See also Madrane v. Hogan*, 2007 WL 3145956, * 12 - * 13 (M.D. Pa.), 520 F. Supp. 2d 654 (M.D. Pa. 2007); *Dang v. Lowe*, 2010 WL 2044632, 2010 WL 2044634 (M.D. Pa.).

The issue is whether Petitioner is subject to the mandatory detention provisions § 236(c) since she was not taken into ICE custody when she was released from confinement by the USMS.

In *Motto v. Sobol,* 2010 WL 146315, *3 (M.D. Pa.), the Court stated:

> The apprehension and detention of aliens, pending removal decisions, are governed by the provisions by § 236 of the INA, 8 U.S.C. § 1226. Under § 1226(a), the Attorney General may issue a warrant for arrest and detention of an alien, pending a decision on whether the alien is to be removed from the United States. Although § 1226(a) permits discretionary (1) states that "The Attorney General shall take into custody any alien who ... (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1).

*See also*, *Thomas v. Hogan*, 2008 WL 4793739, *1-*2; *Donaldson v. Donate*, 2009 WL 5179539, *2 (M.D. Pa.).

There is no dispute that Petitioner completed her federal drug criminal prison sentence based on a conviction which constitutes a removable offense and that ICE did not take her into custody immediately upon her release from criminal incarceration by the USMS. Nonetheless, ICE and the IJ have determined that Petitioner is subject to mandatory detention under § 236(c) without being eligible for an individualized bond hearing.

The clear language of § 236(c) states that an alien is subject to mandatory detention "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation .... ." *See Cox v. Monica*, 2007 WL 1804335, *1 (M.D. Pa.).

Petitioner states that since she was not immediately detained by ICE when she was first released from criminal custody with respect to her federal drug sentence, and since ICE had waited for over eleven months to detain her, the mandatory detention provision is no longer applicable to her. Petitioner states that under the plain meaning of §236(c) she is not subject to the mandatory detention provision.

In *Saysana v. Gillen,* 590 F. 3d 7, 15 (1st Cir. 2009), the Court held that "the Government's effort to make §1226(c)(1) [§236(c)] 'ambiguous' is strained." The *Saysana* Court stated, "[w]e have concluded that the text of the statute [§236(c)] is clear. Consequently, because the "when released" language is unambiguous, there is nothing for the agency to interpret-no gap for it to fill-and there is no justification for resorting to agency interpretation to address an ambiguity." *Id*. at 16.

7

We again find the *Saysana* case persuasive, as we did in our recent Report and Recommendation ("R&R") issued in *Dang v. Lowe*, 2010 WL 2044632, which was largely adopted by the District Court[4], and since we agree with *Saysana* that the text of §236(c) is clear and that the "when released" language is unambiguous this Court is not required, as Respondents suggest it is (Doc. 14 at pp. 11-14), to give *Chevron* deference[5] to the BIA's interpretation of this section as

---

[4]The District Court did not adopt our recommendation in *Dang* that Petitioner's counsel be granted attorney fees since it found that Respondents' reliance on in *Matter of Rojas* case was not unjustified, especially in the absence of Third Circuit case law. 2010 WL 2044634.

[5]*See Chevron USA, Inc., Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

In *Sulayao v. Shanahan*, 2009 WL 3003188, *3-*4 (S.D. N.Y.), the Court stated:

> Under the two-step analysis set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984), this Court must first determine whether section 1226(c) is ambiguous. If it is unambiguous, then Congress's clearly expressed intent is binding upon this Court and the BIA. *Id.* at 842-43. If, however, section 1226(c) is ambiguous, this Court must proceed to the second step of the *Chevron* analysis, and determine whether the BIA's interpretation is permissible. *Id.* at 843.
> "Statutory analysis begins with the plain meaning of a statute." *Natural Res. Def. Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir.2001). Words should be given their "ordinary sense." *Id.* "[T]he meaning of statutory language, plain or not, depends on context." *Bailey v. United States,* 516 U.S. 137, 145 (1995) (quotation marks omitted) (alteration in original). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Muszynski,* 268 F.3d at 98. "when determining which reasonable meaning should prevail, the text should be placed in the context of the entire statutory structure." *Id.*

The *Sulayao* Court found that exhaustion was futile, that § 236(c) was ambiguous, and that the BIA's interpretation of § 236(c) as set forth in *Matter of Rojas* was permissible. We again disagree with the *Sulayao* Court and agree with the *Saysana* Court, and find that the language of § 236(c) is unambiguous.

stated in *Matter of Rojas*.[6]

Petitioner has filed the present Habeas Petition to raise her argument as to why she believes she is not subject to the mandatory detention provision of § 236(c) of the INA, and why she should be immediately released.

Petitioner states that she was not timely detained by ICE when she was released from criminal custody on January 28, 2009, as required by § 236(c). Thus, Petitioner claims that since ICE did not detain her for over eleven months after her release with respect to her federal drug sentence, she is no longer subject to the mandatory detention provisions of § 236(c) of the INA. As in *Dang*, we agree with Petitioner Gonzalez.

As relief in the present habeas case, Petitioner requests that this Court direct Respondents to immediately release her from custody.[7]

*A. Exhaustion of BOP Administrative Remedies*

Petitioner has not exhausted her administrative remedies with respect to her present habeas claim and her challenge to ICE's continued mandatory detention of her, and her denial of his

---

[6] As in *Dang*, Respondents' again rely heavily on *Matter of Rojas*, in support of Petitioner's mandatory detention. However, we find that instant case of Petitioner Gonzalez to be distinguishable from *Matter of Rojas*.

In *Matter of Rojas,* 23 I. & N. Dec. 117, 2001 WL 537957 (BIA), "The [alien] was released from custody of the State of New Hampshire on parole. On July 26, 2000, the second day of his release on criminal parole, he was taken into custody by [ICE]." The present case is not dealing with a matter of days between Petitioner 's release from custody on her sentence for the removable offense and custody of ICE, but rather almost one year.

[7] While we agree in part with Petitioner that she should not be subject to the mandatory detention period, we do not agree nor do we recommend that the relief sought by Petitioner with respect to her request for immediate release from detention should be granted.

request for an individualized bond hearing by the IJ. Petitioner admits her failure to exhaust, but she states that exhaustion of administrative remedies would be futile since the BIA has ruled that § 236(c) mandates her detention without bond.

Generally, a writ of habeas corpus will not issue if the Petitioner has not exhausted his administrative remedies. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted). If a prisoner does not exhaust available remedies, the petition should be dismissed. *Arias v. United States Parole Commission*, 648 F.2d 196, 199 (3d Cir. 1981); *Mayberry v. Pettiford*, 2003 WL 21635306 (5th Cir.); and *Lindsay v. Williamson*, Civil No. 07-808, M.D. Pa., (7-26-07 Memo, J. Caldwell), slip op. p. 4.

However, based on the Court's decision in *Cox v. Monica*, 2007 WL 1804335 (M.D. Pa.), and in *Dang*, 2010 WL 2044634, we find that exhaustion is not required in our case since Petitioner is not appealing a final order of removal.

Thus, as in *Dang*, we again find that Petitioner is not required to exhaust her administrative remedies with respect to her request for an individualized bond hearing. We also find futility of exhaustion, since, as stated, the BIA has precedent against Petitioner and the BIA has clearly indicated how it interprets §236(c). *See Matter of Rojas*, 23 I. & N. Dec. 117, 127 (B.I.A. 2001). Thus, we shall not recommend that Petitioner Gonzalez's Habeas Petition be dismissed for failure to exhaust his administrative remedies.

*B. Petitioner Gonzalez's Mandatory Detention under § 236(c) of the INA*

Petitioner Gonzalez contends that she is not subject to mandatory detention under § 236(c) of the INA since she was not immediately taken into ICE custody when she was released from federal custody in February 2009, and since ICE waited over eleven months to detain her after she was released. Also, it appears that Petitioner was available to ICE during the entire eleven months because Petitioner was eventually arrested by ICE officials at her home and because Petitioner was on probation with respect to her federal drug sentence.[8] Further, Petitioner has now been detained by ICE at LCP for over four months. Petitioner had an IJ hearing scheduled on March 29, 2010, with respect to her request for a bond hearing during her removal proceedings. The IJ denied the request and found that Petitioner was subject to the mandatory detention provision of § 236(c). Petitioner is scheduled for a removal hearing on August 23, 2010.

The parties dispute whether § 236(c) is ambiguous or not. (Doc. 1, ¶33 and Doc. 14 at pp. 11-14). If it is found to be ambiguous, then deference is due to the BIA's interpretation of §236(c) as stated in *Matter of Rojas* if it is reasonable based on the *Chevron* standard.

Based on *Dang, Bromfield* and *Waffi*, as well as *Oscar v. Gillen*, 595 F. Supp. 2d 166, 169 (D. Mass. 2009)(Court found that government's interpretation of §236(c) as applying "any time after the alien is released," "perverts the plain language of the statute") and *Scarlett v. ICE*, 632 F. Supp. 2d 214 (W.D. N.Y. 2009), we find that Petitioner Gonzalez is entitled to an individual bond hearing since she was not taken into immigration custody immediately after her release from federal

---

[8] Nothing is submitted on record by either party that indicates that Petitioner had moved to a new address or any other exigent circumstances that could cause Respondents hardship in detaining Petitioner after her release from the US Marshals.

11

custody by the USMS or within a reasonable time after her release from incarceration. Based on the facts of Petitioner Gonzalez's case, we find that the plain meaning of § 236(c) does not apply to Petitioner since she was undisputedly not taken into ICE custody when she was released from federal confinement or within a reasonable time after her release from confinement, but rather, over eleven months later.

In *Scarlett v. ICE*, 632 F. Supp. 2d at 219-220, the Court found *Oscar* and *Waffi*, as well as *Bromfield* and *Quezada-Bucio* as persuasive, and held that Petitioner Scarlett's detention was not authorized under §236(c) "because Petitioner was released from incarceration nearly eighteen months prior to his immigration detention. The *Scarlett* Court stated that, "[i]nstead, Petitioner's detention was authorized by 8 U.S.C. § 1226(a), which affords Petitioner the opportunity for an individualized bond hearing before an immigration judge." *Id*. (Citations omitted).

In *Bromfield,* the Court stated:

> The phrase "when the alien is released" has been the subject of statutory interpretation in several previous cases, including two published decisions by this Court. *See Quezada-Bucio*, 317 F.Supp.2d at 1228; *Pastor-Camarena v. Smith*, 977 F.Supp. at 1415; *see also Boonkue v. Ridge*, 2004 WL 1146525 (D.Or. 2004); *Alikhani v. Fasano*, 70 F.Supp.2d 1124 (S.D. Cal. 1999); *Alwady v. Beebe*, 43 F.Supp.2d 1130 (D.Or. 1999); *Velasquez v. Reno*, 37 F.Supp.2d 663 (D.N.J. 1999); *Tenrreiro v. Ashcroft*, 2004 WL 1354277, *vacated and transferred*, 2004 WL 1588217 (D.Or.2004). In *Quezada-Bucio*, this Court determined that "the mandatory detention statute, INA § 236(c), does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody." *Quezada-Bucio*, 317 F.Supp.2d at 1231 (finding that petitioner who was released from state custody and was not taken into immigration custody until three years later was not subject

to mandatory detention under INA § 236(c)); *see also Pastor-Camarena*, 977 F.Supp. at 1417 ( holding that the plain meaning of the statute indicates that INA § 236(c) applies to aliens immediately after release from custody, and not to aliens released many years earlier). As the Court previously explained, 'the clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release. *Alikhani*, 70 F.Supp.2d at 1130 . . . [If] Congress had intended for mandatory detention to apply to aliens at any time after they were released, it could easily have used the language *'after* the alien is released," 'regardless of when the alien is released,' or other words to that effect. Instead Congress chose to use the word 'when,' which connotes a much different meaning.

*Quezada-Bucio*, 317 F.Supp.2d at 1230. The Court finds, as in *Quezado-Bucio*, that Congress intended mandatory detention to apply only to those aliens taken into immigration custody immediately after their release from state custody. *Id*.

The Court also disagrees with respondents that the BIA's decision in *IN re Rojas*, 23 I & N Dec. 117 (BIA 2001), and its progeny should be accorded deference. The United States Supreme Court has held that the federal courts should defer to an agency decision only if the statute, "applying the normal 'tools of statutory construction,' [is] ambiguous." *INS v. St. Cyr*, 533 U.S. 289, 320 n. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347 (201) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). As determined above, the plain language of Section 236(c) is not ambiguous.

> Accordingly, the Court agrees with petitioner that mandatory detention is not authorized in petitioner's case by Section 236(c) because he was not taken into immigration custody when he was released from state custody as required by the express language of the statute. *Quezada-Bucio*, 317 F.Supp.2d at 1231; *Pastor-Camarena*, 977 F.Supp. at 1417. The Court also agrees that petitioner is entitled to an individualized bond hearing pursuant to the general release terms of INA § 236(a).

2007 WL 527511, *4-*5.

In *Waffi*, the Court stated:

> In *Pastor-Camarena v. Smith*, the district court examined the phrase "when the alien is released" in the context of a so-called "transition rule" case. 977 F. Supp. 1415, 1417-18 (W.D. Wash. 1997), [FN5]. The court determined that the mandatory detention provision at section 303(b)3)(A) of the IIRIRA (now replaced by section 236(c)(1) of the INA) did not apply to aliens who had been taken into immigration custody years after they had been released from state custody. *Id.* at 1418 ("[I]t was arbitrary and capricious for respondents to interpret the language of IIRIRA § 303(b)(3) to include aliens, like petitioner, who were released from incarceration many years before coming into custody for deportation proceedings."). "The content and structure of the statute make it clear that the 'when the alien is released' language of IIRIRA, § 303(b)(3)(A), must apply to aliens *who are being released* from incarceration on the underlying offense." *Id.* at 1417 (emphasis added). In *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1130 (S.D. Cal. 1999), the strict court explained that because the term "when" is defined as "just after the moment that," it was clear that the mandatory detention language of section 236(c) applied only to those aliens detained in immigration custody "just after the moment that" they are released from state custody (citing Webster's Third New International Dictionary 2602 (3d ed. 1976)). The court went on to explain that if Congress had intended for section 236(c) to apply retroactively to those criminals

14

released before its effective date, it could have used "explicit retroactivity language or required that covered aliens be taken into custody *regardless of when the alien is released* or *at anytime after the alien is released*. *Id.* (internal quotations omitted) (emphasis added); *see also Velasquez*, 37 F.Supp.2d at 670-71. Similarly, in *Alwaday*, the district court opined that had Congress intended for section 236(c) to apply retroactively to criminals released from custody before its effective date, it could have used the phrases "regardless of when the alien is released" or "at any time after the alien is released." 433 F.Supp.2d at 1133. Although the prospective or retroactive application of section 236(c) of the INA is not before the Court, as the district court noted in *Quezada-Bucio v. Ridge*, the language used in the transitional rule "is exactly the same as that used in the permanent rule [*i.e.* section 236(c) of the INA]." 317 F.Supp.2d at 1230. "Thus, in accordance with the rules of statutory construction, the language in question should be interpreted the same way." *Id.* (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). "That interpretation would follow the same logic as the Supreme Court's long-standing rule that identical words used in different parts of the statute must have the same meaning." *Id.* (citing *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 203 n. 12, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993)).

> FN 5 Congress enacted the IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009, on September 30, 1996. The act included "Transition Period Custody Rules," which suspended the operation of section 236(c)(1) from October 9, 1996 until October 9, 1998, after which time the permanent rule, codified at section 236(c0(1) of the INA, took effect. *See* IIRIRA §§ 3039a), 303(b)(3). The transitional rule at issue in *Pastor-Camarena* provides that the Attorney General "shall take into custody any alien [who has committed a specified criminal offense' when the alien is released, without regard to whether the alien may be

15

> arrested or imprisoned again for the same offense." IIRIRA § 303(b)(3)(A). The current version of section 236(c)(1) of the INA and the transitional rule at § 303(b)(3)(A) of the IIRIRA, however, contain the same clause "when the alien is released."

527 F. Supp. 2d at 487-88.

The *Waffi* Court further stated:

> The Court finds that petitioner's construction of section 236(c) is correct. The term "when" includes the characteristic of "immediacy," referring in its primary conjunctive sense, to action or activity occurring "at the time that" or "as soon as" other action has ceased or begun. *See* 20 The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary of the English Language (4th ed. 2000). The Court is not persuaded by respondents' argument that the term "when," as used in section 236(c), is ambiguous because it can "also be defined in a conditional sense, *i.e.*, 'in the event that,'" Resp. to Pet. For Writ of Habeas Corpus at 11. Such a construction appears more properly placed upon the term "whenever" or perhaps the phrase "in the event that," however, neither that term or that phrase is used in section 236(c). Additionally, it would be contrary to the plain language of section 236(c)'s command that the Attorney General take into immigration custody certain criminal aliens "when" those aliens are released from state custody to include those aliens who had "already" been released from state custody. *See Aguilar*, 50 F.Supp.2d at 544. Moreover, statutory language should not be construed in a way that renders a term surplusage. *Quezada-Bucio*, 317 F.Supp.2d at 1228 (citing *United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). If this Court were to agree with the BIA that the clause "when the alien is released" does not describe the class of aliens who are to be detained by the Attorney General, it would doom that clause to removable surplusage. When the BIA argues that section 236(c)(1) could be read simply as requiring the Attorney

16

> General to take into immigration custody any alien [meeting any one of the requirements at § 236(c)(1)(A)(D)] without regard to the timing of that aliens' release from custody, 23 I. & N. Dec. at 121, the phrase "when the alien is released" is rendered a nullity. Therefore, the Court rejects the BIA's construction of the phrase.

*Id*. at 488.

The *Waffi* Court concluded:

> [T]he Court finds that the mandatory detention statute, section 236(c)(1) of the INA, does not apply to an alien such as petitioner, who has been taken into immigration custody well over a month after his release from state custody. The Court finds further that petitioner should be provided with an individualized bond hearing, pursuant to section 236(a) of the INA. Accordingly, the petition for a writ of habeas corpus will be granted in part, and this matter will be remanded to the United States Immigration Court in Arlington, Virginia for the purpose of providing petitioner with an individualized bond hearing within thirty days of the date of this Order. The Immigration Judge will be ordered to determine whether, and under what conditions, petitioner may be released from custody during the pendency of his removal proceedings.

*Id*. at 488.[9]

However, we do not agree with Petitioner Gonzalez that she should be immediately released from detention. Rather, as in *Dang,* we will recommend that Petitioner Gonzalez be given an individualized bond hearing before the IJ since we agree with Petitioner Gonzalez and her present

---

[9] In *Dang,* the District Court found our analysis and the above cited cases "to be persuasive" and adopted our recommendation that Petitioner Dang be afforded an individualized bond hearing. 2010 WL 2044634.

17

argument that the plain meaning of the statute provides that §236(c) only applies to aliens detained immediately after release from custody or within a reasonable time after release from incarceration, and not to aliens released over eleven months earlier. Therefore, we find that Petitioner Gonzalez's Habeas Petition should be granted, in part, to the extent that she should be afforded an individual bond hearing. We find that Petitioner Gonzalez should be afforded an individualized bond hearing within ten (10) days.[10]

### III. Recommendation.

Based on the foregoing, it is respectfully recommended that Petitioner Gonzalez's Petition for Writ of Habeas Corpus (Doc. 1) be granted to the extent that Petitioner Gonzalez should be given an individualized bond hearing within ten (10) days. *See Dang, supra*.[11]

 

 

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 16, 2010**

---

[10] Since Petitioner Gonzalez has now been detained by ICE at LCP for over four months and since she has a removal hearing before an IJ scheduled for August 23, 2010, we recommend that she be given an individualized bond hearing within ten (10) days and not within thirty (30) days as the Court ordered in *Dang*.

[11] Because we disagree with Petitioner Gonzalez's request in her Petition for Writ of Habeas Corpus that she should be immediately released from detention, we recommend that her Motion for Preliminary Injunction (Doc. 2) be denied.

18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN A. GONZALEZ, | : | CIVIL ACTION NO. **1:CV-10-0901** |
| | : | |
| Petitioner | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DEPARTMENT OF HOMELAND SECURITY, et al., | : | |
| | : | |
| Respondents | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 16, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                 s/ Thomas M. Blewitt
                                                 **THOMAS M. BLEWITT**
                                                 **United States Magistrate Judge**

**Dated: June 16, 2010**